SEYFARTH SHAW LLP
Jon D. Meer (SBN 144389)
jmeer@seyfarth.com
Elizabeth M. Levy (SBN 268926)
elevy@seyfarth.com
Jennifer R. Nunez (SBN 291422)
jnunez@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

Attorneys for Defendants
MICHAEL KORS (USA), INC., MICHAEL KORS
STORES (CALIFORNIA), INC., and MICHAEL
KORS RETAIL, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH TAYLOR, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL KORS, INC.; MICHAEL KORS (USA), INC.; MICHAEL KORS STORES (CALIFORNIA), INC.; MICHAEL KORS RETAIL, INC.; ADECCO USA, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. ___2:20-cv-4919___<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT BY DEFENDANTS MICHAEL KORS (USA), INC., MICHAEL KORS STORES (CALIFORNIA), INC., AND MICHAEL KORS RETAIL, INC.**<br><br>(Los Angeles Superior Court, Case No. 20STCV10276)<br><br>*[Concurrently filed with Certificate of Interested Parties; Disclosure Statement; Civil Case Cover Sheet; Declarations of Elizabeth M. Levy and Norma Placencio in Support Thereof]*<br><br>Complaint Filed:      March 16, 2020 |

i

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendants MICHAEL KORS (USA), INC., MICHAEL KORS STORES (CALIFORNIA), INC., and MICHAEL KORS RETAIL, INC. (referred to collectively as "Defendants")[1] hereby remove the above-captioned action from the California Superior Court, County of Los Angeles to the United States District Court for the Central District of California. This Court has original federal jurisdiction over this action pursuant section 1332(d)(2) (the Class Action Fairness Act of 2005) ("CAFA"), and removal jurisdiction under 28 U.S.C. sections 1332(c), 1332(d)(2), 1441(a), 1446 and 1453. Removal is proper for the following reasons:

## I.   BACKGROUND

1.      On March 16, 2020, Plaintiff KENNETH TAYLOR ("Plaintiff") filed an unverified putative Class Action Complaint in the Superior Court of the State of California, County of Los Angeles, entitled "*KENNETH TAYLOR, Plaintiff, v. MICHAEL KORS, INC.; MICHAEL KORS (USA), INC.; MICHAEL KORS STORES (CALIFORNIA), INC.; MICHAEL KORS RETAIL, INC.; ADECCO USA, INC.; and DOES 1 to 100, inclusive, Defendants*," designated Case No. 20STCV10276 (the "Class State Court Action").  (See concurrently-filed Declaration of Elizabeth M. Levy ("Levy Decl.") ¶ 3, Exhibit A, hereto).

2.      On **May 4, 2020**, Plaintiff served the Summons, Complaint, information regarding the Stipulation- Early Organizational Meeting, Discovery Resolution, Informal Discovery Conference, Motions in Limine, ADR Package, Civil Case Cover Sheet and Notice of Case Assignment on Michael Kors (USA), Inc.'s agent for service of process. (Levy Decl. ¶ 3, Exhibit A).

---

[1] Defendants are erroneously named because, among other things, they did not employ Plaintiff. Michael Kors, Inc. is an erroneously named defendant and is not the legal name of any entity affiliated with Defendants.

1

DEFENDANTS' NOTICE OF REMOVAL

3.      On **May 4, 2020**, Plaintiff served the Summons, Complaint, information regarding the Stipulation- Early Organizational Meeting, Discovery Resolution, Informal Discovery Conference, Motions in Limine, ADR Package, Civil Case Cover Sheet and Notice of Case Assignment on Michael Kors Stores (California), Inc.'s agent for service of process. (Levy Decl. ¶ 4, Exhibit B).

4.      On **May 4, 2020**, Plaintiff served the Summons, Complaint, information regarding the Stipulation- Early Organizational Meeting, Discovery Resolution, Informal Discovery Conference, Motions in Limine, ADR Package, Civil Case Cover Sheet and Notice of Case Assignment on Michael Kors Retail, Inc.'s agent for service of process. (Levy Decl. ¶ 5, Exhibit C).

5.      On **May 4, 2020**, Plaintiff served a Notice of Court Order on Newly Filed Class Action and Notice of Initial Status Conference Order on Michael Kors (USA), Inc. (Levy Dec., ¶ 6, Exhibit D).

6.      On **May 4, 2020**, Plaintiff served a Notice of Court Order on Newly Filed Class Action and Notice of Initial Status Conference Order on Michael Kors Stores (California), Inc. (Levy Dec., ¶ 7, Exhibit E).

7.      On **May 4, 2020**, Plaintiff served a Notice of Court Order on Newly Filed Class Action and Notice of Initial Status Conference Order on Michael Kors Retail, Inc. (Levy Dec., ¶ 8, Exhibit F).

8.      According to the Los Angeles County Superior Court's website, on **May 22, 2020,** Plaintiff filed a separate action entitled *Kenneth Taylor v. Michael Kors, Inc. et al.* Case No. 20STCV19614.  This complaint purports to assert claims under the Private Attorneys' General Act ("PAGA Complaint").   Defendants have not been served with a copy of the PAGA Complaint; however, a true and correct copy of the PAGA Complaint obtained from the Court's docket is attached to the Levy Decl. as Exhibit G, along with (1) Civil Case Cover Sheet; (2) Summons; (3) Notice of Case Management Conference; (4) Notice of Case Assignment and Plaintiff's Notice of Preemptory Challenge; (5) Order

63791461v.2

Granting Plaintiff's Preemptory Challenge and (6) Notice of Case Reassignment. (Levy Decl. ¶ 9, Exhibit G).

9.      On **June 2, 2020**, Defendants filed their Answer to Plaintiff's unverified Complaint in Los Angeles County Superior Court. (Levy Decl. ¶ 10, Exhibit H).

10.      On **June 2, 2020,** Defendants filed a Notice of Related Cases in the PAGA action, relating the PAGA Complaint and the Class State Court Action. (Levy Decl. ¶ 11, Exhibit I).  On **June 3, 2020,** Defendants filed a Notice of Related Cases in Plaintiff's Class Action matter.  *Id.*

11.      Exhibits A through I constitute all of the pleadings served on Defendants, filed by Defendants in the Los Angeles Superior Court, or retrieved from the Superior Court's records prior to filing of this Notice of Removal. (Levy Decl., ¶ 12).

## II.      <u>TIMELINESS OF REMOVAL</u>

12.      The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

13.      The service of process which triggers the 30-day period to remove is governed by state law.  *City of Clarksdale v. BellSouth Telecommunications, Inc.*, 428 F.3d 206, 210 (5th Cir. 2005) ("Although federal law requires the defendant to file a removal motion within thirty days of service, the term 'service of process' is defined by state law.").

14.      This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendants' agent for service of process, on May 4, 2020.  Cal. Code Civ. Proc. § 415.10 ("A summons may be served by

3

<u>DEFENDANTS' NOTICE OF REMOVAL</u>

63791461v.2

personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b).  Thirty (30) days from the service of the Complaint on Defendants on May 4, 2020 is June 3, 2020.

15.    Defendants' 30-day time limit to remove is triggered by Plaintiff's service of the Summons and the Complaint on May 4, 2020.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint"). This Notice of Removal is timely because it is filed within thirty (30) days of personal service of the Summons and Complaint on May 4, 2020.  28 U.S.C. § 1446(b); Cal. Civ. Proc. Code § 415.10.

16.    Plaintiff's Complaint asserts seven causes of action for: (1) Failure To Pay Wages For All Time Worked At Minimum Wage; (2) Failure To Pay Overtime; (3) Failure To Authorize Or Permit Meal Periods; (4) Failure To Authorize Or Permit Rest Periods; (5) Failure To Provide Complete And Accurate Wage Statements; (6) Failure To Timely Pay All Earned Wages And Final Paychecks Due At Time Of Separation Of Employment; and (7) Unfair Business Practices.

17.    The Complaint seeks to certify the following classes:

• Minimum Wage Class: All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who were not paid at least at minimum wage for all time they were subject to Defendants' control.

• Overtime Class: All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked more than eight in a day to whom Defendants did not pay overtime wages.

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

•       Meal Period Class: All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked shifts greater than 5 hours in a workday and did not receive wages to compensate them for missed meal periods, late meal periods, and/or short meal periods.

•       Rest Period Class: All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who worked at least three and one-half (3.5) or more hours in day who did not receive required rest periods of ten net minutes rest time for every four hours worked between three and one-half and six hours, six and ten hours, or ten and fourteen hours.

•       Wage Statement Class: All current and former hourly non-exempt employees employed by Defendants in California at any time within the one year prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who received inaccurate or incomplete wage and hour statements.

•       Waiting Time Class: All current and former hourly non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who did not receive payment of all unpaid wages upon separation of employment within the statutory time period.

Ex. A, Compl. ¶ 39.

18.     Accordingly, for purposes of the calculations in this Notice of Removal, the "relevant time period" starting "four years preceding the filing of this Complaint" is from March 16, 2016 until the present.

DEFENDANTS' NOTICE OF REMOVAL

1
2

## III.   CLASS ACTION FAIRNESS ACT ("CAFA") REMOVAL

3       19.    This Court has original jurisdiction of this action under CAFA, codified in
4   pertinent part at 28 U.S.C. Section 1332(d)(2).  As set forth below, this action is properly
5   removable, pursuant to 28 U.S.C. Section 1441(a), in that this Court has original
6   jurisdiction over the action, because the aggregate amount in controversy exceeds
7   $5,000,000, exclusive of interest and costs, and the action is a class action in which at
8   least one class member is a citizen of a state different from that of a defendant.  28 U.S.C.
9   §§ 1332(d)(2) & (d)(6).  Furthermore, the number of putative class members is greater
10  than 100.  28 U.S.C. § 1332(d)(5)(B); Declaration of Norma Placencio in Support of
    Defendants' Notice of Removal ("Placencio Decl."), ¶ 9.

11      A.    **Plaintiff and Defendants Are Minimally Diverse**
12
13      20.    CAFA requires only minimal diversity for the purpose of establishing
14  federal jurisdiction; that is, at least one purported class member must be a citizen of a
15  state different from any named defendant. *See* 28 U.S.C. § 1332(d)(2)(A). Here, such
16  minimal diversity exists among the parties. Plaintiff is a citizen of a state (California) that
17  is different from the state of citizenship of Defendants (which are citizens of New York
18  and Delaware).

19      1.    **Plaintiff Is A Citizen of California**
20      21.    For purposes of determining diversity, a person is a "citizen" of the state in
21  which he or she is domiciled.  *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090
22  (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common
23  law a party must … be domiciled in the state").  Residence is prima facie evidence of
24  domicile.  *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the
25  place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust
26  Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's
27  complaint alleges he resides in California, "in the absence of evidence to the contrary,
28  [plaintiff] is a California citizen for diversity purposes").  Citizenship is determined by

the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

22.     The Complaint alleges that Plaintiff was allegedly employed at Michael Kors (USA), Inc.'s business located in Whittier, California (Ex. A, Compl. ¶ 7).[2] Plaintiff's intent to remain domiciled in California is further evident from the fact that he brought his lawsuit in Los Angeles Superior Court.

23.     Furthermore, to the extent Adecco USA, Inc. ("Adecco") provides additional information regarding Plaintiff's citizenship, Defendants incorporate by reference any and all such information.  Defendants join in any removal filed by Adecco.

24.     Based on the foregoing and any additional information in Adecco's removal, which is incorporated by reference, Plaintiff is a citizen of California.

### 2.     Defendants Are Not Citizens Of California

25.     Defendants are, and were at the time of the filing of this action, citizens of a state other than California within the meaning of 28 U.S.C. Section 1332(c)(1).  For purposes of diversity jurisdiction, a corporation is deemed a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

26.     Defendants now, and ever since this action commenced have been, incorporated under the laws of the State of Delaware.  (Placencio Decl. ¶¶ 4-6.  Thus, for purposes of diversity jurisdiction, Defendants are citizens of Delaware.

27.     Further, as shown below, Defendants' principal place of businesses are, and have been at all times since this action commenced, located in the State of New York. (Placencio Decl., ¶¶4- 6.)  Thus, for purposes of diversity jurisdiction, Defendants are also citizens of New York.

---

[2] Plaintiff was temporarily placed by a staffing agency to perform services at a Michael Kors (USA), Inc. facility; he not employed by Defendants.

7

DEFENDANTS' NOTICE OF REMOVAL

28.     The United States Supreme Court held that when determining a corporation's principal place of business for diversity purposes, the appropriate test is the "nerve center" test. *Hertz Corp. v. Friend,* 559 U.S. 77, 80-81, 92-93 (2010). Under the "nerve center" test, the "principal place of business" means the corporate headquarters where a corporation's high level officers direct, control and coordinate its activities on a day-to-day basis. *Id.* ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities").

29.     Under the "nerve center" test, New York emerges as Defendants' principal place of business.

### a.     Michael Kors (USA), Inc. Is Not A Citizen Of California

30.     Michael Kors (USA), Inc.'s high level officers direct, control, and coordinate its activities from its corporate headquarters in New York, N.Y. (Placencio Decl. ¶4).  Michael Kors (USA), Inc.'s high level corporate officers including its Chief Executive Officer, Chief Operating Officer and General Counsel maintain offices in the New York, N.Y. headquarters. *Id.* Michael Kors (USA), Inc. also maintains an office at One Meadowlands Plaza, East Rutherford, N.J. *Id.* Michael Kors (USA), Inc.'s executive and administrative functions, including payroll, human resources, corporate finance and accounting, are directed from either the New York, N.Y. corporate headquarters or the East Rutherford, N.J. corporate office. *Id.*

### b.     Michael Kors Stores (California), Inc. Is Not A Citizen Of California

31.     Michael Kors Stores (California), Inc. maintains its corporate headquarters at 11 West 42nd Street, New York, NY 10036. (Placencio Decl., ¶ 5). Michael Kors Stores (California), Inc.'s high level officers direct, control, and coordinate its activities from its corporate headquarters in New York, N.Y. *Id.* Michael Kors Stores (California), Inc.'s high level corporate officers including its Chief Executive Officer, Chief Operating Officer and General Counsel maintain offices in the New York, N.Y. headquarters, and

DEFENDANTS' NOTICE OF REMOVAL
63791461v.2

Michael Kors Stores (California), Inc.'s corporate level functions are performed in the New York, N.Y. office. *Id.*

### 3. Michael Kors Retail, Inc. Is Not A Citizen Of California

32.    Michael Kors Retail, Inc. maintains its corporate headquarters at 11 West 42nd Street, New York, NY 10036. (Placencio Decl., ¶ 6). Michael Kors Retail, Inc.'s high level officers direct, control, and coordinate its activities from its corporate headquarters in New York, N.Y. *Id.* Michael Kors Retail, Inc.'s high level corporate officers including its Chief Executive Officer, Chief Operating Officer and General Counsel maintain offices in the New York, N.Y. headquarters, and Michael Kors Retail, Inc.'s corporate level functions are performed in the New York, N.Y. office. *Id.*

33.    Therefore, for purposes of diversity of citizenship, Defendants are and have been at all times since this action commenced, citizens of the State of Delaware and the State of New York.  28 U.S.C. § 1332(c)(1).  Because Plaintiff is a citizen of California and Defendants are citizens of Delaware and New York, minimal diversity exists for purposes of CAFA.

34.    **Doe Defendants.** Pursuant to 28 U.S.C. § 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *Fristoe v. Reynolds Metals Co*., 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *see also Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant").  Indeed, the presence of "DOE" defendants in this case has no bearing on diversity of citizenship for removal.  Thus, the existence of "DOES 1 through 100" in the Complaint does not deprive this Court of jurisdiction.  *Abrego v. Dow Chemical Co*., 443 F.3d 676, 679-80 (9th Cir. 2006) (rule applied in CAFA removal).

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

### B.   The Amount in Controversy Exceeds the Statutory Minimum

35.   CAFA requires that the amount in controversy exceed $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).  Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  28 U.S.C. § 1332(d)(6).  In addition, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Senate Judiciary Committee Report, S. Rep. No. 109-14, at 42 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 40.  The Senate Judiciary Committee's Report on the final version of CAFA also makes clear that any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  *Id*. at 42-43 ("if a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . .  Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

36.   **Preponderance Of The Evidence Standard.**  Plaintiff's Complaint does not allege the amount in controversy for the class he purports to represent.  Where a complaint does not allege a specific amount in damages, the removing defendant bears the burden of proving by a **preponderance of the evidence** that the amount in controversy exceeds the statutory minimum.  In *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588 (2013), the U.S. Supreme Court held that the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

evidence standard.  *Accord Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard").

37.    In 2011, Congress amended the federal removal statute to specify that, where the underlying state practice "permits recovery of damages in excess of the amount demanded . . . removal of the action is proper on the basis of an amount in controversy asserted . . . if the district court finds, by the *preponderance of the evidence*, that the amount in controversy exceeds the amount specified in section 1332(a)."  Pub.L. 112–63, December 7, 2011, 125 Stat. 758, § 103(b)(3)(C) (codified at 28 U.S.C. § 1446(c)(2) (emphasis added)); *accord Abrego*, 443 F.3d 676, 683 (9th Cir. 2006) ("Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007) ("the complaint fails to allege a sufficiently specific total amount in controversy … we therefore apply the preponderance of the evidence burden of proof to the removing defendant").  The defendant must show that it is "more likely than not" that the jurisdictional threshold is met.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996) ("where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional minimum]. Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount"); *Schiller v. David's Bridal, Inc.*, 2010 WL 2793650, at *2 (E.D. Cal. July 14, 2010) (same).

38.    To satisfy this standard, the "defendants' notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014); *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("Because some remnants of our former antiremoval presumption seem to persist, we reaffirm three

principles that apply in CAFA removal cases.  First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but **only plausible allegations** of the jurisdictional elements"; "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite ... amount'") (emphasis added).

39.    The burden of establishing the jurisdictional threshold "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages."  *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

40.    It is well-settled that "the court must accept as true plaintiff's allegations as plead in the Complaint and assume that plaintiff will prove liability and recover the damages alleged."  *Muniz v. Pilot Travel Ctrs. LLC*, 2007 WL 1302504, *3 (E.D. Cal. May 1, 2007) (denying motion for remand of a class action for claims under the California Labor Code for missed meal and rest periods, unpaid wages and overtime, inaccurate wage statements, and waiting-time penalties).

41.    As explained by the Ninth Circuit, "the amount-in-controversy inquiry in the removal context is not confined to the face of the complaint."  *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that the ordinary preponderance of the evidence standard applies even if a complaint is artfully pled to avoid federal jurisdiction); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 702 (9th Cir. 2007) (holding that even if a plaintiff affirmatively pled damages less than the jurisdictional minimum and did not allege a sufficiently specific total amount in controversy, the removing defendant is still only required to show by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold).

42.   **The Court Must Assume A 100% Violation Rate Based On Plaintiff's Class-Wide Allegations.**  If a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise:

> As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the "master of [her] claim[s]," and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.  She did not.

*Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see also Wheatley v. MasterBrand Cabinets*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("Defendant and the Court must rely on assumptions regarding the rate of the alleged violations … Plaintiff does not allege that some putative class members were subject to distinct policies. The Court therefore finds the assumption that uniform … policies were applied to **all** putative class members reasonable") (emphasis added); *Soratorio v. Tesoro Ref. and Mktg. Co., LLC*, 2017 WL 1520416, at *3 (C.D. Cal. Apr. 26, 2017) ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate.  The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendant's 'common practice.'  It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Arreola v. The Finish Line*, 2014 WL 6982571, *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

Cir. 2011) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

43. Numerous other district courts have similarly concluded that alleging a policy of noncompliance in a complaint justifies the assumption of a 100 percent violation rate. *See Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice—or other similar language—and where the plaintiff offers no evidence rebutting this violation rate"); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (where complaint alleged "[the defendant] engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform violation that would preclude a 100 percent violation rate."); *Soratorio, LLC*, 2017 WL 1520416, at *3 ("Plaintiff's Complaint could be reasonably read to allege a 100% violation rate. The Complaint notes that Defendants 'did not provide' Plaintiff and the other class members 'a thirty minute meal period for every five hours worked,' and that this was Defendants' 'common practice.' It also alleges that Defendants had a practice of 'requiring employees to work for four hours and more without a rest period' and that Defendants had a 'common practice' of failing to provide required breaks."); *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1030 (C.D. Cal. 2017) ("Given the vague language of the Complaint and the broad definition of the class, it is

14
DEFENDANTS' NOTICE OF REMOVAL

reasonable for Defendants to assume a 100% violation rate – especially since Plaintiffs offer no alternative rate to challenge Defendant's calculations."); *Jones v. Tween Brands, Inc.*, 2014 WL 1607636, at *3 (C.D. Cal. Apr. 22, 2014) (using 100 percent violation rate for waiting-time penalties since the complaint did not limit the number or frequency of violations).

44.     The alleged amount in controversy in this class action, in the aggregate, exceeds $5,000,000.  Plaintiff's Complaint seeks to certify, and seeks relief on behalf of, "[a]ll current and former hourly non-exempt employees employed by Defendants[3] in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class." (Ex. A, Compl. ¶ 39).  Given that Plaintiff's Complaint was filed on March 16, 2020, for purposes of the calculations in this Notice of Removal the "relevant time period" is from **March 16, 2016** until the present.

45.     During the relevant time period identified in the Complaint, at least 4,903 non-exempt hourly employees were employed by Defendants in California. (Placencio Decl. ¶ 9). The total number of work weeks for the 4,903 employees is at least 175,749 work weeks. (*Id.*). (These figures do not include Adecco USA, Inc.'s employees.) During the relevant period, Defendants'  employees' starting base rates of pay were at least minimum wage.  *Id.* at ¶12.  As of January 1, 2017, the minimum wage in California was $10.50. CAL. LAB. CODE § 1182.12(b)(C).

46.     Plaintiff seeks to recover, on behalf of himself and the alleged class, unpaid wages and penalties for Defendants' alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to pay all wages due upon resignation or termination of employment, failure to provide accurate and complete itemized wage statements, and unfair business practices.  (Levy Decl., Ex. A, Complaint.)  Plaintiff also seeks attorneys' fees and costs.  (*Id.* at Ex. A, Complaint, Prayer for Relief.)  As is detailed below, the amount in controversy is met without including the amount in

---

[3] Including defendant Adecco USA, Inc.

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

1  controversy with respect to defendant Adecco, USA, Inc.'s employees or Plaintiff's claim

2  for PAGA penalties.  (Levy Decl., Exs. G & I ).

3       47.    As set forth below, the amount in controversy implicated by the class-wide

4  allegations easily exceeds $5,000,000.00. **All calculations supporting the amount in**

5  **controversy are based on the Complaint's allegations, assuming, without any**

6  **admission of the truth of the facts alleged and assuming solely for purposes of this**

7  **Notice of Removal that liability is established.**

8                    **1.    Unpaid Minimum Wage And Overtime Claim**

9       48.    Plaintiff alleges Defendants violated California Labor Code §§ 1194 and

10  1197 by failing to pay employees for all hours worked. Specifically, Plaintiff alleges

11  Defendants required "Plaintiff and similarly situated employees to work off-the-clock . . .

12  resulting in Plaintiff and similarly situated employees working time each day for which

13  they were not compensated any wages…Plaintiff maintains that he and other similarly

14  situated employees were required to go through security checks and/or bag checks after

15  clocking out for meal periods, during rest periods and at the end of their shift without

16  being paid for that time." (Ex. A, Compl. ¶¶ 21, 25).

17       49.    As to these claims, Plaintiff seeks to certify a class covering the last four

18  years. Defendants employed at least 4,903 non-exempt employees in California since

19  March 16, 2016. (Placencio Decl. ¶ 9). These employees worked at least 175,749 work

20  weeks. (*Id.*).

21       50.    Plaintiff does not, however, provide any details in terms of how many hours

22  per day or week he and the putative class members allegedly worked without

23  compensation.  However, activities that take only ten minutes or less outside an

24  employee's scheduled working hours are generally considered *de minimis* outside of

25  California, and thus not compensable.  *See*, *e.g.*, *Anderson v. Mt. Clemens Pottery Co.*,

26  328 U.S. 680, 692 (1946); *Lindow v. United States*, 738 F.2d 1057, 1062, 1063 (9th Cir.

27  1984) ("[i]t is only when an employee is required to give up a substantial measure of his

28  time and effort that compensable working time is involved"; "most courts have found

daily periods of 10 minutes *de minimis* even though otherwise compensable"). And, although the California Supreme Court recently held that the *de minimis* doctrine may not be available in defending against unpaid wage claims under the California Labor Code in many contexts, it addressed specifically instances involving regular or routine minutes of off-the-clock work, and indicated that the defense may still be available in the context of "minute or irregular" instances of compensable time. *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 835 (2018). Thus, in order to plead a claim for unpaid minimum wages or overtime wages, Plaintiff's allegations must necessarily involve time that is more than "*de minimis*" under California law.

51.   Although Defendants deny Plaintiff's allegations or that he or the putative class are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations and the remaining applicability of the *de minimis* rule, that employees worked, at minimum, 15 minutes of unpaid time per week. Conservatively interpreting Plaintiff's claim and assuming there was one minute of off the clock work due to time spent going through a security check (1) after clocking out for a meal period, (2) during a rest period and (3) at the end of the shift, that would total three minutes per shift. Given the fact that Defendants' California facilities are generally open seven days a week, and most employees work five days a week, it is reasonable to assume 15 minutes of alleged off the clock work per week under Plaintiff's theory.

52.   As the Ninth Circuit and numerous district courts have held, an estimate of at least 15 minutes per class member per week is appropriate in light of Plaintiff's allegation that Defendants had a "pattern and practice" of wage abuse, including overtime violations. *See, e.g.*, *Arias*, 936 F.3d at 927 (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Wheatley*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding an estimate of one hour per class member per week appropriate where Plaintiff alleged a "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy

17

DEFENDANTS' NOTICE OF REMOVAL

overtime wages, [defendant] assumes that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate the assumption that each class member is owed one hour of overtime compensation per week where the complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where the plaintiffs' asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank*, N.A., 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable the defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

53.     Conservatively assuming that the putative class members worked 15 minutes per work week off the clock, and assuming that time did not result in any overtime, the potential unpaid wages total **$461,314.41.13** (175,749 work weeks x .25/hour per week x $10.50/rate hour minimum wage[4]).

## 2.     Meal and Rest Break Claims

54.     Plaintiff seeks recovery on his behalf and on behalf of the putative class based on his allegation that "Plaintiff and similarly situated employees were not given a duty-free meal period because **Defendants maintain a policy, practice, and/or procedure** whereby Defendants require Plaintiff and similarly situated employees to go through security checks and/or bag checks after clocking out for meal periods." (Ex. A, Compl. ¶ 28). Plaintiff also alleges that "Plaintiff and similarly situated employees were not given an uninterrupted 10-minute rest period for shifts from three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours, or 30 minutes for shifts of more than 10 hours up to 14 hours because **Defendants' policy** required Plaintiff and similarly situated employees to go through security checks and/or bag

---

[4] Defendants conservatively assume that the putative class earned minimum wage, which was $10.50 as of January 1, 2017, and increased throughout the relevant period.

DEFENDANTS' NOTICE OF REMOVAL
63791461v.2

checks during their rest breaks." (Ex. A, Compl. ¶ 32). Plaintiff seeks one hour of additional pay for each workday a "proper meal [or rest] period was not provided." *Id.* at ¶¶64, 72.

55.     California Labor Code Section 512 provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes . . . ."  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes . . . ."  California Labor Code Section 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods or rest periods.  Case law makes clear that an employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code section 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

56.     The statute of limitations for recovery for meal or rest period premium pay under California Labor Code section 226.7 pay is three years.  *Murphy v. Kenneth Cole Prods.*, Inc., 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations.").  However, Plaintiff alleges a claim for meal and rest break premiums pay as part of his unfair competition claim under Business and Professions Code section 17200, *et seq.*  (Ex. A, Complaint, ¶ 120.)  Although Defendants contend that meal and rest break premium pay cannot be recovered under Business and Professions Code section 17200 (*Pineda v. Bank of America, N.A.*, 50 Cal. 4th 1389, 1401 (2010)), according to the allegations in Plaintiff's Complaint, the four-year statute of limitations applies for purposes of removal.  Cal. Bus. & Prof. Code § 17208.  Thus, for determining the amount in controversy, the four-year statute of limitations applies.

DEFENDANTS' NOTICE OF REMOVAL
63791461v.2

57.     Plaintiff is silent as to the amount of alleged meal periods or rest periods he claims to have been denied, thereby precluding precise estimates of the amount in controversy.  Because Plaintiff alleges that Defendants had a "pattern and practice" and a policy and practice of not providing the putative class with all meal periods and rest periods, while also alleging that "Plaintiff's claims are typical of all other class members' [claims]" (Ex. A, Complaint, p. 13), the Complaint contemplates a 100% violation rate for the meal period and rest period claims.  Accordingly, a 100% violation rate can properly be assumed for purposes of calculating the amount in controversy of Plaintiff's meal and rest period claims.  *See Muniz*, 2007 WL 1302504, at *4 (citing *Caterpillar, Inc.*, 482 U.S. at 392 (finding a 100 percent violation rate appropriate when "plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%").

58.     While Defendants are entitled to assume a 100 percent violation rate (*i.e.*, five missed meal periods and five missed rest periods per workweek) based on the allegations in the Complaint, Defendants will conservatively assume that putative class members were not provided **just one** meal period **and** one rest period each workweek.[5] Where Plaintiff has alleged a policy and practice of meal and rest period violations, it is reasonable to assume that there was at least one meal and rest period violation each week for every employee.  Indeed, district courts have consistently upheld even higher assumptions of meal period and rest period violations as plausible for purposes of determining the amount in controversy.  *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019) (finding an estimate of five meal period and three rest break violations per week reasonable where Plaintiff alleged a "a policy and practice" of meal and rest break violations); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151 (S.D. Cal.

---

[5] Plaintiff cannot allege that "common questions of law and fact exist as to all members of the Plaintiff classes and predominate over any questions that affect only individual members of each class" (Levy Decl. Ex. A, Complaint, p. 13), without also implicitly alleging that each putative class member suffered at least one meal period and one rest period violation per week based on a "policy, practice/and or procedure."  (*Id.* Complaint, ¶¶ 20, 28, 32).

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

2018) ("Defendant conservatively assumed the putative class members were not provided … three of ten rest periods they were entitled to receive each work week, even though assumption of a 100 percent violation rate may have been reasonable based on allegations in the Complaint. The Court therefore we (*sic*) finds Defendant's assumed violation rates reasonable"); *Agredano v. Sw. Water Co.*, 2017 WL 2985395, at *6 (C.D. Cal. May 30, 2017) ("Plaintiff further alleges that Defendants 'routinely' and 'consistently' failed to provide him and the putative class members with the required 30–minute lunch break periods.  Plaintiff does not limit the number of violations alleged in his Complaint, nor has he offered any evidence that he or other putative class members missed fewer than five legally required meal breaks per week. Thus, the Court finds that 'Plaintiff's own complaint alleges universal violations of meal ... period laws' such that Defendants' 'use of a 100% violation rate [five missed meal periods] is proper.'"); *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding an estimate of five missed rest periods a week reasonable where plaintiff alleged that defendant maintained "policies, practices and procedures that caused the purported violations. . ."); *Lopez v. Aerotek, Inc.*,  2015 WL 2342558, at *2 (C.D. Cal. May 14, 2015) (finding defendant's estimate of five meal period and five rest period violations was reasonable); *Coleman*, 730 F. Supp. 2d at 1150  ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate," i.e., 5 missed meal periods and five missed rest breaks per week).  *Accord Arias*, 936 F.3d at 926 (holding that "Marriott's assumptions are plausible" where it assumed "one missed rest break" as the "lowest assumed violation rate").

59.    As stated above, during the relevant time period identified in the Complaint, Defendants employed at least 4,903 non-exempt employees in California from March 16, 2016 through March 12, 2020. (Placencio Decl. ¶ 9). These employees worked at least 175,749 work weeks and earned at least a minimum hourly rate of $10.50 during this period of time. (*Id.* at ¶¶ 9, 12).

60.    Although Defendants deny that Plaintiff (or any putative class member) is entitled to any meal or rest period premium payments, assuming **just one meal and rest period violation per week** for each putative class member, the amount in controversy would be approximately would be approximately **$3,690,729.** [$10.50/hour x 1 meal violation + 1 rest violation x 175,749 work weeks].

### 3.    Waiting Time Penalties

61.    Plaintiff also alleges Defendants violated Labor Code §§ 201 and 202 by failing to timely provide payment upon termination. Specifically, Plaintiff alleges, "[b]ecause Defendants failed to pay Plaintiff and similarly situated employees all their earned wages (including minimum wages, overtime wages, as well as unpaid meal and rest period premium wages), Defendants failed to pay those employees timely after each employee's termination." (Ex. A., Compl. ¶ 38).

62.    On these grounds, Plaintiff seeks "waiting time penalties" under California Labor Code § 203.  (Levy Decl. Ex. A, Complaint, ¶ 89.)  Under California Labor Code § 203, a discharged employee is entitled to penalties of up to 30 days' pay at his or her regular pay.  *See* Cal. Lab. Code § 203(a) ("If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days").

63.    The statute of limitations period for California Labor Code § 203 penalties extends back only three years from the date of filing of the complaint, or March 16, 2017. *See Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1399 (2010) ("if an employer failed to timely pay final wages to an employee who quit or was fired, the employee would have had one year to sue for the section 203 penalties but, under Code of Civil Procedure section 338, subdivision (a) (Stats.1935, ch. 581, § 1, p. 1673), three years to sue for the unpaid final wages giving rise to the penalty").

64.    It is also reasonable to assume that each employee waited over 30 days for payment of any allegedly unpaid wages.  *See Tajonar v. Echosphere*, LLC, 2015 WL

63791461v.2

4064642, at \*4-5 (S.D. Cal. July 2, 2015) (finding reasonable the defendant-employer's assumption that each employee was entitled to the maximum thirty-day penalty); *Byrd v. Masonite Corp.*, 2016 WL 2593912, at \*3 (C.D. Cal. May 5, 2016) ("[I]t is not unreasonable for [defendant] to assume that each employee would be entitled to the maximum wage penalty – thirty days – for waiting time violations").

65.     In addition, because Plaintiff does not allege that some (or any) class members worked part time, and he contends employees missed meal breaks when they worked over 10 hours and missed rest breaks when they worked over 14 hours, it is reasonable to assume that each employee worked eight hour shifts.  *See Wheatley*, 2019 WL 688209, at \*6 ("it is reasonable for Defendant to assume eight-hour shifts"). However, Defendants' conservative, "plausible" calculations of the amount in controversy for Plaintiff's claim for waiting time penalties accounts for both part-time and full-time employees.

66.     During the relevant period, there were approximately 3,078 putative class members employed by Defendants in California whose employment ended. (Placencio Decl. at ¶ 10).

67.     Assuming that these 3,078 putative class members are owed only 6 hours of pay per day for the maximum penalty of 30 days' wages, the alleged amount in controversy for the claim for waiting time penalties would be approximately **$5,817,420** [($10.50 x 6 hours x 30 days) x 3,078].

### 4.     Wage Statement Penalties

68.     The Complaint also alleges that "Defendants failed to provide accurate and complete wage statements to Plaintiff and others similarly situated in violation of Labor Code Section 226(a) because they did not reflect all of the employees' earnings." (Ex. A, Compl. ¶ 77). Plaintiff seeks penalties under Labor Code section 226(e) for alleged wage statement violations. (Ex. A, Compl. ¶¶ 79-82).

69.     Labor Code section 226(e) provides a minimum of $50 for the initial violation of as to each employee, and $100 for each further violation as to each

23

63791461v.2

employee, up to a maximum penalty of $4,000 per employee. *See* Cal. Lab. Code § 226(e).  The statute of limitations for recovery of penalties under Labor Code § 226 is one year.  *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 376 (2005); Cal. Civ. Proc. Code § 340(a).   Thus, here, the relevant period is since March 16, 2019.

70.     During that period, there were approximately 1,299 non-exempt employees who worked for Defendants in California for at least 13,435 pay periods. (Placencio Decl. at ¶ 11). Given Plaintiff's broad allegations, it is reasonable to assume a 100% violation rate. *See, e.g., Coleman*, 730 F. Supp. 2d at 1150 ("Plaintiff included no limitation on the number of violations, and, taking his complaint as true, Defendants could properly calculate the amount in controversy based on a 100% violation rate).

71.     Plaintiff contends that the initial violation is $50, and that subsequent violations are $100. (Ex. A, Comp. at ¶ 54). Using Plaintiff's method of calculation, the amount in controversy by this claim is **$1,278,550** (1,299 first pay periods multiplied by $50 + 12,136 pay periods times $100).

### 5.     Approximate Aggregate Amount In Controversy

72.     Although Defendants deny Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for all asserted claims, exclusive of attorneys' fees, is approximately **$10,786,699.90**, calculated as follows:

|  |  |
|---|---|
| **$461,314.13** | Unpaid Minimum Wages & Overtime Claim |
| **$3,690,729** | Meal/Rest Period Claim (Assuming Just 1 Missed Meal Period And 1 Missed Rest Period Per Workweek) |
| **$5,817,420** | Waiting Time Penalties |
| **$1,278,550** | Wage Statement Penalties |

DEFENDANTS' NOTICE OF REMOVAL
63791461v.2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 6.   Attorneys' Fees

73.   Plaintiff also seeks attorneys' fees.  (Ex. A, Complaint, Prayer for Relief.) Requests for attorneys' fees must also be taken into account in ascertaining the amount in controversy.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy.")

74.   A reasonable estimate of fees likely to be recovered may be used in calculating the amount in controversy.  *Longmire v. HMS Host USA, Inc.*, 2012 WL 5928485, at *9 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in controversy under CAFA.") (*citing Brady*, 243 F. Supp. 2d at 1010-11); *Muniz*, 2007 WL 1302504 at *4 (attorneys' fees appropriately included in determining amount in controversy).

75.   In a recent decision, the Ninth Circuit held that "a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."  *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414-15 (9th Cir. 2018) ("[T]he amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal).  Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

76.   Indeed, the Ninth Circuit again very recently explicitly confirmed that "when a statute or contract provides for the recovery of attorneys' fees, prospective

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2

1   attorneys' fees must be included in the assessment of the amount in controversy,"

2   including in the context of determining CAFA jurisdiction and as a "principle[] that

3   appl[ies] in CAFA removal cases." *Arias*, 936 F.3d at 922.

4       77.    In the class action context, courts have found that 25 percent of the

5   aggregate amount in controversy is a benchmark for attorneys' fees award under the

6   "percentage of fund" calculation and courts may depart from this benchmark when

7   warranted. *See, e.g.*, *Wheatley*, 2019 WL 688209, at *6 (C.D. Cal. Feb. 19, 2019)

8   (finding that an estimate of attorney's fees of 25% reasonable); *Ramos v. Schenker, Inc.*,

9   2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018) ("[T]the 25% benchmark provides a

10  non-speculative guidepost for assessing jurisdiction."); *Campbell v. Vitran Exp., Inc.*, 471

11  F. App'x 646, 649 (9th Cir. 2012) (attorneys' fees appropriately included in determining

12  amount in controversy under CAFA); *Powers v. Eichen*, 229 F.3d 1249, 1256-57 (9th

13  Cir. 2000) ("We have also established twenty-five percent of the recovery as a

14  'benchmark' for attorneys' fees calculations under the percentage-of-recovery

15  approach"); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *28-29 (N.D. Cal.

16  Apr. 1, 2011) (finding ample support for adjusting the 25% presumptive benchmark

17  upward and found that plaintiffs' request for attorneys' fees in the amount of 42% of the

18  total settlement payment was appropriate and reasonable in the case); *Cicero v. DirecTV,

19  Inc.*, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) (finding attorneys' fees in the

20  amount of 30% of the total gross settlement amount to be reasonable); *see also In re

21  Quintas Secs. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting that in the class

22  action settlement context the benchmark for setting attorneys' fees is 25 percent of the

23  common fund).  Even under the conservative benchmark of 25 percent of the total

24  amount in controversy for Plaintiff's claims, attorneys' fees alone would be upward of

25  **$2,696,674.98** in this case [$10,786,699.90  total amount in controversy * 0.25].

26      78.    Although Defendants deny Plaintiff's allegations that he or the putative class

27  are entitled to any relief, based on Plaintiff's allegations and prayer for relief, and a

28  conservative estimate based on those allegations, the total amount in controversy is

**$13,483,374.90**, including attorneys' fees.  This total amount in controversy far exceeds the $5,000,000 threshold set forth under 28 U.S.C. § 1332(d)(2) for removal jurisdiction.

79.      Accordingly, because diversity of citizenship exists, and the amount in controversy exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. section 1332(d)(2).  This action is therefore a proper one for removal to this Court pursuant to 28 U.S.C. section 1441(a).

80.      To the extent that Plaintiff has alleged any other claims for relief in the Complaint over which this Court would not have original jurisdiction under 28 U.S.C. section 1332(d), the Court has supplemental jurisdiction over any such claims pursuant to 28 U.S.C. section 1367(a).

## IV.   VENUE

81.      Venue lies in the Central District of California pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(c). This action originally was brought in the Superior Court of the State of California, County of Los Angeles, which is located within the Central District of the United States District Court for California. Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## V.   NOTICE TO STATE COURT AND ALL PARTIES

82.      Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given promptly to Plaintiff and all counsel of record, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Los Angeles, in the State Court Action.

83.      This Notice of Removal will be served on counsel of record for all parties. A Certificate of Service regarding the Notice of Removal and supporting documents will be filed concurrently.

84.      In compliance with 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders served upon Defendants in this action are attached to the Levy Declaration as Exhibits A through I.

## VI.   PRAYER FOR REMOVAL

85.   WHEREFORE, Defendants pray that this civil action be removed from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

DATED: June 3, 2020                  Respectfully submitted,

SEYFARTH SHAW LLP


By: */s/ Jennifer R. Nunez*
    Jon D. Meer
    Elizabeth M. Levy
    Jennifer R. Nunez

    Attorneys for Defendants
    MICHAEL KORS (USA), INC., MICHAEL
    KORS STORES (CALIFORNIA), INC., and
    MICHAEL KORS RETAIL, INC.

28

DEFENDANTS' NOTICE OF REMOVAL

63791461v.2